# UNITED STATES DISTRICT COURT
## DISTRICT OF KANSAS
## KANSAS CITY DIVISON

JODI MATTHEWS,                            )
                                          )
    Plaintiff,                            )
                                          )
v.                                        )
                                          )
METROPOLITAN LIFE                         )
INSURANCE COMPANY,                        ) Case No.
                                          )
                                          )
    and                                   )
                                          )
BURLINGTON NORTHERN SANTA FE              )
GROUP BENEFITS PLAN,                      )
                                          )
                                          )
    Defendants.

## **COMPLAINT**

1. The Plaintiff, Jodi Matthews, by and through the undersigned counsel, Talia Ravis, files this Complaint against Defendants Metropolitan Life Insurance Company (hereinafter "MetLife") and Burlington Northern Santa Fe Group Benefits Plan (hereinafter "The Plan").

2. This action arises under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §1001. The Court has jurisdiction over this case pursuant to 28 U.S.C. §1331, in that this action arises under the laws of the United States. Specifically, Jodi Matthews brings this action to enforce her rights under ERISA as authorized by 29 U.S.C. §1132(a)(1)(B).

3. The Plaintiff, Jodi Matthews, has at all times material hereto, been a citizen of Lenexa, Kansas.

4. MetLife is a New York corporation doing business in Johnson County, Kansas. Therefore, pursuant to 29 U.S.C. §1132(e)(2), venue is proper in the Kansas City Division.

5. MetLife issued The Plan, group identification number 0028200, to Burlington Northern Santa Fe, LLC (hereinafter "BNSF") for the benefit of the employees of BNSF, agreeing to pay Plaintiff, as a BNSF employee and participant of The Plan, long-term disability ("LTD") benefits and life waiver of premium ("LWOP") benefits in the event she became disabled and unable to work.

6. The Plan is a group LTD employee benefit plan that provides LTD benefits to participants of The Plan in the event they become disabled on a long-term basis. The LTD benefit pays a percentage of the employee's former salary. The LTD benefits are payable as long as the participant remains totally and permanently disabled, through age 65.

7. The LWOP portion of the plan provides a waiver of premium benefit on the life insurance portion of The Plan during periods of disability.

8. MetLife actually insures the disability and life insurance coverage to BNSF employees.

9. MetLife is the payor of Plaintiff's LTD and LWOP claims.

10. MetLife processed and terminated Plaintiff's LTD and LWOP claims.

11. MetLife has a financial interest in Plaintiff's LTD and LWOP claims.

12. MetLife has a conflict of interest in Plaintiff's LTD and LWOP claims.

13. Plaintiff requests a trial on all issues triable, and designates Kansas City, Kansas, as its place of trial for this action.

**FACTUAL ALLEGATIONS**

1. **Vocational Information.**

14. Plaintiff began employment with BNSF in May of 2013.

15. Plaintiff worked as a Senior Instructional Designer at BNSF. In this position, Plaintiff's day-to-day tasks varied. Plaintiff's role included a number of responsibilities, including, but not limited to: meeting with customers to determine technical training needs; continuing to meet with customers for checks and approvals; writing course exercises, activities, reviews, assessments, and instructor guides; designing course, storyboards, graphics, animations, exercises and assessments; researching existing technical content and labor agreements; meeting with subject matter experts; visiting job site locations, observing classes, interviewing employees; overseeing and managing contractors and other employees; managing each project from start to completion; and conducting training.

2. **The Definition of "Disability" under The Plan.**

16. According to the terms of the policy, Disability is defined as:

    *"<u>Long Term Disability (LTD) Insurance Program</u>*

    *To qualify for LTD Insurance Program benefits, you must become disabled while you are covered under the Program.*

    *You are considered "disabled" if:*

    ➢ *You are under the continuing care of a physician because of accidental injury, illness or condition (including pregnancy for women); and*
    ➢ *During the first 24 months of LTD benefits, you are unable to earn more than 80 percent of your regular benefits pay as an active BNSF employee at your own occupation or at a similar occupation with any employer in your local economy; or*
    ➢ *After the end of the 24 months of LTD benefits, you are unable to earn more than 60 percent of your regular benefits pay as an active BNSF employee or from any employer in your local economy at any job that you are qualified for based on your training, experience and regular earnings as an active BNSF employee."*

3

[**The Short Term Disability Benefit and Long Term Disability Insurance Programs policy, page 11**]

### 3. Medical Information Supporting Plaintiff's Total Disability.

17. In September of 2015, Plaintiff was forced to stop working due to the disabling effects of autoimmune encephalitis, ataxia, viscous spatial deficit, loss of fine finger dexterity, gait disturbance, and depression.

18. As a result of these ailments, Plaintiff suffers from multiple disabling symptoms, including, but not limited to: pain, dizziness, balance problems, unsteady gait, cognitive difficulty, including memory loss and difficulty with speech; weakness, fatigue, paresthesia of her left arm and foot; nausea, insomnia, vertigo and headaches.

19. Plaintiff has attempted to treat her multiple disabling conditions with IVIG therapy, steroids, vestibular therapy, medications, evaluations with specialists, physical therapy, and psychological counseling, but nothing has provided her with enough relief to return to work.

20. Plaintiff's physicians have consistently held that Plaintiff has remained totally disabled from performing her own or any job since she was forced to stop working in September of 2015, and that she continues to remain totally and permanently disabled today.

21. In July of 2017 the Social Security Administration approved Plaintiff's claim for Social Security Disability Insurance Benefits, finding her totally disabled from performing any substantial gainful activity.  The SSA defines "disability" as the following:

"the term disability means:

*(A) Inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death*

*or has lasted or can be expected to last for a continuous period of not less than 12 months."*

### 4. Claim Information Under The Plan.

22. In September of 2015, Plaintiff was no longer able to work due to the severity of her conditions.

23. Plaintiff applied for LTD benefits under The Plan in September of 2015.

24. Defendant MetLife initially approved Plaintiff's claim for LTD and LWOP benefits in a letter dated February 15, 2016, and began paying her accordingly.

25. After receiving LTD benefits for twelve months, in the letter dated February 10, 2017, Defendant MetLife abruptly terminated Plaintiff's claim for LWOP benefits.

26. In another letter dated February 21, 2017, MetLife also abruptly terminated Plaintiff's LTD claim, alleging that she was no longer precluded from performing her own occupation, despite the fact that there had been no improvement in her condition.

27. In September of 2017, with the help of undersigned counsel, Plaintiff appealed the denial of her LTD and LWOP benefits.

28. As part of Plaintiff's combined appeal, Plaintiff submitted to MetLife evidence supporting the fact that she remains totally disabled from her own occupation, or any other occupation and that her condition has not improved in any way, including:

- Sworn statement testimony provided by Plaintiff's treating physician, Dr. Kosa, showing that his support for Plaintiff's disability has never waivered;
- Three Attending Physicians Statements' provided by Plaintiff's treating physician, Dr. Kaplan, showing that his support for Plaintiff's disability has never waivered;

- Updated medical records showing continuous treatment for her several conditions;
- Plaintiff's medication regimen and side effects from medications; and
- Plaintiff's Social Security Disability award letter.

29. In a letter dated October 19, 2017, MetLife informed Plaintiff that it required an additional 45-days to review her appeal.

30. To date, MetLife has not rendered a decision regarding Plaintiff's appeal.

31. Pursuant to the Department of Labor's regulations, MetLife was required to render a decision within 90 days of receipt of Plaintiff's appeal. 29 C.F.R. §2560.501-1(f)(3).

32. As of today's date, 124 days has passed since MetLife received Plaintiff's appeal.

33. Plaintiff's administrative remedies are "deemed exhausted", once the deadline for decision has passed, so the claimant may then file a civil action. 29 C.F.R. §2560.503-1(l).

34. The medical information in MetLife's claim file establishes that Plaintiff was entitled to receive long-term disability and life waiver of premium benefits under The Plan for the entire duration of the benefit period.

35. Plaintiff's physicians reported to MetLife that she continues to be totally disabled.

36. Plaintiff provided significant proof of disability. Despite this proof, Defendants refused to pay Plaintiff her disability benefits.

37. In determining Plaintiff's LTD and LWOP benefits, MetLife acts as a fiduciary in the administration of Plaintiff's claim.

38. MetLife, acting under a conflict of interest, breached its fiduciary duties set forth in ERISA § 404, 29 U.S.C. § 1104, in failing to act for the exclusive benefit of Plaintiff and in failing to act in accordance with the terms of the Plan.

39. Plaintiff has exhausted all administrative remedies.

## CLAIMS FOR RELEIF

### COUNT 1:   WRONGFUL DENIAL OF LONG-TERM DISABILITY AND LIFE WAIVER OF PREMIUM BENEFITS

40. The foregoing paragraphs are hereby re-alleged, and are incorporated herein by reference.

41. From September of 2015, until the present, Plaintiff has remained unable to perform her own occupation, or any other.

42. Plaintiff has provided the Defendants with substantial medical evidence verifying her total disability and eligibility for LTD and LWOP benefits under The Plan.

43. Her physicians have reported that Plaintiff is unable to work due to the seriousness of her conditions.

44. The Defendants have wrongfully terminated Plaintiff's long-term disability and life waiver of premium benefits in violation of The Plan and ERISA.

45. Defendants have breached The Plan and violated ERISA by failing to pay disability benefit payments to Plaintiff at a time when The Plan knew, or should have known, that Plaintiff was entitled to those benefits under the terms of The Plan.

46. Plaintiff is informed and believes and thereon alleges that Defendant wrongfully terminated her LTD and LWOP benefits under The Plan by other acts or omissions of which Plaintiff is presently unaware, but which may be discovered in this future litigation and which Plaintiff will immediately make Defendants aware of once said acts or omissions are discovered by Plaintiff.

47. Following the denial of benefits under The Plan, Plaintiff exhausted all administrative remedies required under ERISA, and/or as demonstrated by Defendants' actions herein, attempts to pursue further administrative remedies would have been futile.

48. Plaintiff has performed all duties and obligations on Plaintiff's part to be performed under The Plan.

49. As a proximate result of the aforementioned wrongful conduct of MetLife and The Plan, Plaintiff has damages for loss of LTD and LWOP benefits in a total sum to be shown at the time of trial.

50. The wrongful conduct of MetLife and The Plan has created uncertainty where none should exist; therefore, Plaintiff is entitled to enforce her rights under the terms of The Plan.

51. Defendant MetLife abused its discretion by wrongfully terminating Plaintiff's LTD and LWOP benefits.

52. By terminating Plaintiff's claims despite a plethora of evidence supporting her eligibility for benefits under The Plan, Defendants terminated Plaintiff's claim in bad faith.

WHEREFORE, the Plaintiff, Jodi Matthews, requests that this Honorable Court enter Judgment:

    A. Finding that Jodi Matthews is entitled to LTD and LWOP benefits and order the Defendants to pay all past due benefits and pay for further monthly benefits as they become due.

    B. Award the Plaintiff interest on the amount of past due benefits, which remain unpaid.

    C. Award the Plaintiff her attorney's fees and costs.

    D. Awarding all other relief as may be just and appropriate.

Dated: January 10, 2018

                                            By: /s/Talia Ravis_____
Talia Ravis
KS Bar No. 22212
Law Office of Talia Ravis, PA
9229 Ward Parkway, Suite 370
Kansas City, Missouri 64114
816-333-8955 (tel)
1-800-694-3016 (fax)
travis@erisakc.com

*ATTORNEY FOR PLAINTIFF*